SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Jeri Leigh Miller (24102176)
Parker G. Embry (24126826)
Chelsea McManus (24131499)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:    (214) 981-3400
Email:    tom.califano@sidley.com
           jeri.miller@sidley.com
           parker.embry@sidley.com
           cmcmanus@sidley.com

SIDLEY AUSTIN LLP
Stephen Hessler (*pro hac vice* pending)
Patrick Venter (*pro hac vice* pending)
Weiru Fang (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:    (212) 839-5300
Facsimile:    (212) 839-5599
Email:    shessler@sidley.com
           pventer@sidley.com
           weiru.fang@sidley.com

SIDLEY AUSTIN LLP
James W. Ducayet (*pro hac vice* pending)
Steven E. Sexton (*pro hac vice* pending)
Andrew F. Rodheim (*pro hac vice* pending)
One South Dearborn
Chicago, Illinois 60603
Telephone:    (312) 853-7000
Facsimile:    (312) 853-7036
Email:    jducayet@sidley.com
           ssexton@sidley.com
           arodheim@sidley.com

*Proposed Attorneys for the Debtor
and Debtor in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| MERIT STREET MEDIA, INC.[1] | Case No. 25-80156 (SWE) |
| Debtor. | |
| MERIT STREET MEDIA, INC. | |
| Plaintiff, | |
| v. | Adv. Proc. No. 25-08006 |
| TRINITY BROADCASTING OF TEXAS, INC., AND TCT MINISTRIES, INC. | |
| Defendants. | |

**APPENDIX TO DEBTOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

[1] The last four digits of the Debtor's federal tax identification number are 8990. The Debtor's mailing address is 5501 Alliance Gateway Fwy, Fort Worth, TX 76177.

# EXHIBIT A

THIS INSTRUMENT AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"). THEY MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED, HYPOTHECATED OR OTHERWISE TRANSFERRED EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR UPON RECEIPT BY THE COMPANY OF AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY THAT REGISTRATION IS NOT REQUIRED UNDER THE ACT.

## CONVERTIBLE PROMISSORY NOTE

US $25,000,000.00                                                                                              September 9, 2024

**FOR VALUE RECEIVED**, **Merit Street Media, Inc.**, a Delaware corporation (the "**Company**"), hereby promises to pay to the order of **CrossSeed, Inc.,** a Texas non-profit corporation (the "**Holder**"), the principal sum of TWENTY-FIVE MILLION AND NO/100 UNITED STATES DOLLARS (US $25,000,000.00) (the "**Principal Amount**"), together with interest thereon from the date of issuance of this convertible promissory note (this "**Note**"). Unless earlier converted into Conversion Shares (as defined below) or prepaid in accordance with the terms of this Note, the principal and accrued interest of this Note will be due and payable by the Company on September 7, 2026 (the "**Maturity Date**"). Capitalized terms not otherwise defined in this Note will have the meanings set forth in Section 5.1.

    **1.**    **Payment**. All payments will be made in lawful money of the United States of America at the principal office of the Company, or at such other place as the Holder may from time to time designate in writing to the Company. Payment will be credited first to accrued interest due and payable, with any remainder applied to principal.

    **2.**    **Prepayment.** The Company shall prepay the entire Principal Amount and any accrued but unpaid interest of this Note at the closing of any Corporate Transaction. The Company may prepay the Principal Amount of this Note or any accrued interest thereon in whole or in part at any time or from time to time without penalty or premium.

    **3.**    **Interest**. Except as provided below, the Principal Amount outstanding under this Note from time to time shall bear interest at a rate per annum equal to TWELVE PERCENT (12%) simple interest (i.e., interest that is only calculated on the Principal Amount of the Note and not compounded). All interest accrued under this Note shall be payable on the Maturity Date. If any amount payable hereunder is not paid when due, whether at the Maturity Date, by acceleration, or otherwise, such overdue amount shall bear interest at a rate per annum equal to SEVENTEEN PERCENT (17%) simple interest. All computations of interest hereunder shall be made on the basis of a year of 365/366 days, as the case may be, and the actual number of days elapsed. Interest shall begin to accrue on the Principal Amount on the date of this Note. For any portion of the Note that is repaid, interest shall not accrue on the date on which such payment is made. In no event will any interest charged, collected or reserved under this Note exceed the maximum rate then permitted by applicable law, and if any payment made by the Company under this Note exceeds such maximum rate, then such excess sum will be credited by the Holder as a payment of principal and such interest rate shall be reduced automatically to the maximum rate permitted by applicable law.

    **4.**    **Secured Obligation**. To secure the payment and performance the obligations under this Note, the Company hereby grants to the Holder a security interest in and pledges and assigns to the Holder the following properties, assets, and rights of the Company, wherever located, whether the Company now has or hereafter acquires an ownership or other interest or power to transfer, and all proceeds and products thereof (all of the same being hereinafter called the "**Collateral**"): all personal property of every kind and nature including all goods (including inventory, equipment, and any accessions thereto), instruments (including promissory notes), accounts, money, deposit accounts, securities and all other investment property, contract rights or rights to the payment of money,

insurance claims and proceeds, and all general intangibles. The Company authorizes the Holder to prepare and file any financing statement or notice of security interest necessary or desirable to perfect Holder's security interest in the Collateral, and any continuation statement or amendment with respect thereto, in any appropriate filing office, including the office of the Secretary of State of the State of Texas or the United States Patent and Trademark Office. If an Event of Default (as defined in Section 8 below) shall have occurred and be continuing, the Holder may exercise any rights and remedies available to the Holder under applicable law, including, but not limited to, those rights and remedies available to the Holder under Article 9 of the Uniform Commercial Code as in effect from time to time in the State of Texas.

5. **Conversion**. This Note will be convertible solely into Equity Securities pursuant to the following terms.

   **5.1** Definitions.

   (a) "**Affiliate**" means, with respect to any Person, any other Person who, directly or indirectly (including through one or more intermediaries), controls, is controlled by, or is under common control with, such Person. For purposes of this definition, "control," when used with respect to any specified Person, shall mean the power, direct or indirect, to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or partnership or other ownership interests, by contract or otherwise.

   (b) "**Common Stock**" means the Company's common stock, par value $0.01.

   (c) "**Conversion Price**" means (rounded to the nearest 1/100th of one cent) with respect to any conversion of this Note at the time of a Qualified Financing, the quotient resulting from dividing (x) US $425,000,000.00 by (y) the Fully Diluted Capitalization immediately prior to the closing of the applicable Qualified Financing.

   (d) "**Conversion Shares**" (for purposes of determining the type of Equity Securities issuable upon conversion of this Note) means shares of Equity Securities issued in the applicable Qualified Financing.

   (e) "**Corporate Transaction**" means:

      (i) the closing of the sale, transfer or other disposition, in a single transaction or series of related transactions, of all or substantially all of the Company's assets or the exclusive license of all or substantially all of the Company's material intellectual property;

      (ii) the consummation of a merger or consolidation of the Company with or into another entity (except a merger or consolidation in which the holders of capital stock of the Company immediately prior to such merger or consolidation continue to hold a majority of the outstanding voting securities of the capital stock of the Company or the surviving or acquiring entity immediately following the consummation of such transaction); or

      (iii) the closing of the transfer (whether by merger, consolidation or otherwise), in a single transaction or series of related transactions, to a "person" or "group" (within the meaning of Section 13(d) and Section 14(d) of the Exchange Act), of the Company's capital stock if, after such closing, such person or group would become the "beneficial owner" (as defined in Rule 13d-3 under the Exchange Act) of more than 50% of the outstanding voting securities of the Company (or the surviving or acquiring entity).

      For the avoidance of doubt, a transaction will not constitute a "Corporate Transaction" if its sole purpose is to change the state of the Company's incorporation or to create a holding company that will be owned in substantially the same proportions by the Persons who held the Company's

securities immediately prior to such transaction. Notwithstanding the foregoing, the sale of Equity Securities in a bona fide financing transaction will not be deemed a "Corporate Transaction."

(f) **"Equity Securities"** means (i) Common Stock; (ii) any securities conferring the right to purchase Common Stock; or (iii) any securities directly or indirectly convertible into, or exchangeable for (with or without additional consideration) Common Stock. Notwithstanding the foregoing, the following will not be considered "Equity Securities": (A) any security granted, issued or sold by the Company to any director, officer, employee, consultant or adviser of the Company for the primary purpose of soliciting or retaining their services; or (B) any convertible promissory notes (including this Note) issued by the Company.

(g) **"Exchange Act"** means the Securities Exchange Act of 1934, as amended.

(h) **"Fully Diluted Capitalization"** means the number of issued and outstanding shares of the Company's capital stock, assuming the conversion or exercise of all of the Company's outstanding convertible or exercisable securities, including shares of convertible preferred stock and all outstanding vested or unvested options or warrants to purchase the Company's capital stock. Notwithstanding the foregoing, "Fully Diluted Capitalization" excludes any convertible promissory notes (including this Note) issued by the Company.

(i) **"Outside Investor"** means any Person who is not (i) a shareholder, officer, director or employee of the Company or (ii) an Affiliate of a shareholder, officer, director or employee of the Company.

(j) **"Person"** means any natural person, corporation, limited partnership, general partnership, limited liability company, joint stock company, joint venture, association, company, estate, trust, bank trust company, land trust, business trust, or other organization, whether or not a legal entity, custodian, trustee-executor, administrator, nominee or entity in a representative capacity and any government or agency or political subdivision thereof.

(k) **"Qualified Financing"** means the sale (or series of related sales) by the Company of its Equity Securities following the date of issuance of this Note with the principal purpose of raising capital from Outside Investors.

(l) **"Securities Act"** means the Securities Act of 1933, as amended.

**5.2** **Option of Holder to Convert Note at Time of Qualified Financing.** On the occurrence of any Qualified Financing prior to the repayment of this Note, the Holder may elect to convert the outstanding Principal Amount and unpaid accrued interest on this Note into Conversion Shares upon the closing of such Qualified Financing. The number of Conversion Shares the Company issues upon such conversion will equal the quotient (rounded down to the nearest whole share) obtained by dividing (x) the outstanding Principal Amount and unpaid accrued interest under this Note on the date of conversion by (y) the applicable Conversion Price. At least five (5) days prior to the closing of such Qualified Financing, the Company will notify the Holder in writing of the terms of the Equity Securities that are expected to be issued in such financing. The issuance of Conversion Shares pursuant to the conversion of this Note will be on, and subject to, the same terms and conditions applicable to the Equity Securities issued in the such Qualified Financing.

**5.3** **Mechanics of Conversion.**

(a) Financing Agreements. The Holder acknowledges that the conversion of this Note into Conversion Shares pursuant to Section 5.2 may require the Holder's execution of certain agreements relating to the purchase and sale of the Conversion Shares, as well as registration rights, rights of first refusal and co-sale, rights of first offer and voting rights, if any, in the applicable Qualified Financing

(collectively, the "**Financing Agreements**"). The Holder agrees to execute all of the Financing Agreements in connection with a Qualified Financing.

(b) <u>Certificates</u>. As promptly as practicable after the conversion of this Note and the issuance of the Conversion Shares, the Company (at its expense) will issue and deliver a certificate or certificates evidencing the Conversion Shares (if certificated) to the Holder, or if the Conversion Shares are not certificated, will deliver a true and correct copy of the Company's share register reflecting the Conversion Shares held by the Holder. The Company will not be required to issue or deliver the Conversion Shares until the Holder has surrendered this Note to the Company (or provided an instrument of cancellation or affidavit of loss). The conversion of this Note pursuant to Section 5.2 may be made contingent upon the closing of the Qualified Financing.

(c) <u>No Fractional Shares</u>. No fractional Conversion Shares shall be issued upon conversion of this Note. In lieu of such fractional shares, the Company shall pay to the Holder in cash the amount that is not so converted.

(d) <u>Payment of Accrued Interest</u>. Notwithstanding the conversion of this Note, the Company, in its discretion, may elect to pay all or a portion of the accrued but unpaid interest on this Note in cash.

(e) <u>No Partial Conversions</u>. The Holder shall not be entitled to partially convert this Note pursuant to the terms of this Section 5.

6. **Representations and Warranties of the Company.** In connection with the transactions contemplated by this Note, the Company hereby represents and warrants to the Holder as follows:

**6.1** <u>Due Organization; Qualification and Good Standing</u>. The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and has all requisite corporate power and authority to carry on its business as now conducted. The Company is duly qualified to transact business and is in good standing in each jurisdiction in which the failure to so qualify or to be in good standing would have a material adverse effect on the Company.

**6.2** <u>Authorization and Enforceability</u>. Except for the authorization and issuance of the Conversion Shares, all corporate action has been taken on the part of the Company and its officers, directors and stockholders necessary for the authorization, execution and delivery of this Note. Except as may be limited by applicable bankruptcy, insolvency, reorganization or similar laws relating to or affecting the enforcement of creditors' rights, the Company has taken all corporate action required to make all of the obligations of the Company reflected in the provisions of this Note valid and enforceable in accordance with its terms.

**6.3** <u>Use of Proceeds</u>. The Company shall use the Principal Amount solely for the general working capital needs of the Company.

**6.4** <u>No Distributions or Redemptions</u>. For so long as this Principal Amount of this Note remains unpaid, the Company shall not pay any dividends or make any other distributions to the shareholders of the Company.

7. **Representations and Warranties of the Holder.** The Holder hereby represents and warrants to the Company as follows:

**7.1** On the date hereof:

(a) The Holder has full power and authority to enter into this Note and to perform all obligations required to be performed by it hereunder. This Note, when executed and delivered by the

*Merit Street Media Convertible Promissory Note*                                                            *Page 4 of 9*

Holder, will constitute the Holder's valid and legally binding obligation, enforceable in accordance with its terms, except (a) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance and any other laws of general application affecting enforcement of creditors' rights generally, and (b) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

**7.2** In connection with any issuance of the Conversion Shares and as a condition of such issuance, Holder represents to the Company that:

(a) <u>Purchase Entirely for Own Account</u>. The Conversion Shares will be acquired for investment for the Holder's own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof, and that the Holder has no present intention of selling, granting any participation in, or otherwise distributing the same. The Holder further represents that the Holder does not have any contract, undertaking, agreement or arrangement with any Person to sell, transfer or grant participations to such Person or to any third Person, with respect to the Conversion Shares. The Holder also represents it has not been organized solely for the purpose of acquiring the Conversion Shares.

(b) <u>Disclosure of Information; Non-Reliance</u>. The Holder acknowledges that it has received all the information it considers necessary or appropriate to enable it to make an informed decision concerning an investment in the Conversion Shares. The Holder further represents that it has had an opportunity to ask questions and receive answers from the Company regarding the terms and conditions of the offering of the Conversion Shares. The Holder confirms that the Company has not given any guarantee or representation as to the potential success, return, effect or benefit (either legal, regulatory, tax, financial, accounting or otherwise) of an investment in the Conversion Shares. In deciding to purchase the Conversion Shares, the Holder is not relying on the advice or recommendations of the Company and has made its own independent decision that the investment in the Conversion Shares is suitable and appropriate for the Holder. The Holder understands that no federal or state agency has passed upon the merits or risks of an investment in the Conversion Shares or made any finding or determination concerning the fairness or advisability of this investment.

(c) <u>Investment Experience</u>. The Holder is an investor in securities of companies in the development stage and acknowledges that it is able to fend for itself, can bear the economic risk of its investment and has such knowledge and experience in financial or business matters that it is capable of evaluating the merits and risks of the investment in the Conversion Shares.

(d) <u>Accredited Investor</u>. The Holder is an "accredited investor" within the meaning of Rule 501 of Regulation D promulgated under the Securities Act. The Holder agrees to furnish any additional information requested by the Company or any of its Affiliates to assure compliance with applicable U.S. federal and state securities laws in connection with the purchase and sale of the Conversion Shares.

(e) <u>Restricted Securities</u>. The Holder understands that the Conversion Shares have not been, and will not be, registered under the Securities Act or state securities laws, by reason of specific exemptions from the registration provisions thereof which depend upon, among other things, the bona fide nature of the investment intent and the accuracy of the Holder's representations as expressed herein. The Holder understands that the Conversion Shares are "restricted securities" under U.S. federal and applicable state securities laws and that, pursuant to these laws, the Holder must hold the Conversion Shares indefinitely unless they are registered with the Securities and Exchange Commission ("**SEC**") and registered or qualified by state authorities, or an exemption from such registration and qualification requirements is available. The Holder acknowledges that the Company has no obligation to register or qualify the Conversion Shares for resale and further acknowledges that, if an exemption from registration or qualification is available, it may be conditioned on various requirements including, but not limited to, the time and manner of sale, the holding period for the Conversion Shares, and on

requirements relating to the Company which are outside of the Holder's control, and which the Company is under no obligation, and may not be able, to satisfy.

(f) No Public Market. The Holder understands that no public market now exists for the Conversion Shares and that the Company has made no assurances that a public market will ever exist for the Conversion Shares.

(g) No General Solicitation. The Holder, and its officers, directors, employees, agents, stockholders or partners have not either directly or indirectly, including through a broker or finder, solicited offers for or offered or sold the Conversion Shares by means of any form of general solicitation or general advertising within the meaning of Rule 502 of Regulation D under the Securities Act or in any manner involving a public offering within the meaning of Section 4(a)(2) of the Securities Act. The Holder acknowledges that neither the Company nor any other person offered to sell the Conversion Shares to it by means of any form of general solicitation or advertising within the meaning of Rule 502 of Regulation D under the Securities Act or in any manner involving a public offering within the meaning of Section 4(a)(2) of the Securities Act.

**8.** Events of Default and Remedies.

**8.1** Events of Default. The occurrence and continuance of any of the following shall constitute an "**Event of Default**" hereunder:

(a) the Company fails to pay timely any of the Principal Amount due under this Note on the date the same becomes due and payable or any unpaid accrued interest or other amounts due under this Note on the date the same becomes due and payable;

(b) the Company fails to perform any of its other obligations under this Note within fifteen (15) days from the date on which Company receives Holder's written notice of such non-performance;

(c) any representation or warranty made by the Company in or in connection with this Note is materially false when made;

(d) the Company files any petition or action for relief under any bankruptcy, reorganization, insolvency or moratorium law or any other law for the relief of, or relating to, debtors, now or hereafter in effect, or makes any assignment for the benefit of creditors or takes any corporate action in furtherance of any of the foregoing; or

(e) an involuntary petition is filed against the Company (unless such petition is dismissed or discharged within 60 days under any bankruptcy statute now or hereafter in effect, or a custodian, receiver, trustee or assignee for the benefit of creditors (or other similar official) is appointed to take possession, custody or control of any property of the Company).

**8.2** Remedies. Upon the occurrence and during the continuance of an Event of Default, the Holder may, at its option, by written notice to the Company declare the outstanding Principal Amount of this Note, accrued and unpaid interest thereon, and all other amounts payable hereunder immediately due and payable; *provided, however,* if an Event of Default described in Sections 8.1(d) or (e) occur, the outstanding Principal Amount, accrued and unpaid interest, and all other amounts payable hereunder shall become immediately due and payable without notice, declaration, or other act on the part of the Holder.

**9. Miscellaneous.**

**9.1** Successors and Assigns. Except as otherwise provided herein, the terms and conditions of this Note will inure to the benefit of, and be binding upon, the respective successors and assigns of the parties; provided, however, that the Company may not assign its obligations under this Note without the written consent of the Holder. This Note is for the sole benefit of the parties hereto and their respective successors and permitted assigns, and nothing herein, express or implied, is intended to or will confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Note, except as expressly provided in this Note.

**9.2** Choice of Law. This Note, and all matters arising out of or relating to this Note, whether sounding in contract, tort, or statute will be governed by and construed in accordance with the internal laws of the State of Texas, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of Texas.

**9.3** Counterparts. This Note may be executed in counterparts, each of which will be deemed an original, but all of which together will be deemed to be one and the same agreement. Counterparts may be delivered via facsimile, electronic mail (including PDF or any electronic signature complying with the U.S. federal ESIGN Act of 2000, *e.g.*, www.docusign.com) or other transmission method, and any counterpart so delivered will be deemed to have been duly and validly delivered and be valid and effective for all purposes.

**9.4** Notices. All notices and other communications given or made pursuant hereto will be in writing and will be deemed effectively given: (a) upon personal delivery to the party to be notified; (b) when sent by electronic communication (including email, internet or intranet websites, or facsimile) properly addressed with written acknowledgment from the intended recipient such as "return receipt requested" function, return e-mail, or other written acknowledgment; (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications will be sent to the respective parties at the addresses shown on the signature pages hereto (or to such email address, facsimile number or other address as subsequently modified by written notice given in accordance with this Section 9.4).

**9.5** No Finder's Fee. Each party represents that it neither is nor will be obligated to pay any finder's fee, broker's fee or commission in connection (directly or indirectly) with the transactions contemplated by this Note.

**9.6** Expenses. Each party will pay all costs and expenses that it incurs with respect to the negotiation, execution, delivery and performance of this Note.

**9.7** Attorneys' Fees. If any action at law or in equity is necessary to enforce or interpret the terms of this Note, the prevailing party will be entitled to reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled.

**9.8** Entire Agreement; Amendments and Waivers. This Note constitutes the full and entire understanding and agreement between the parties with regard to the subject hereof. Any term of this Note may be amended and the observance of any term may be waived (either generally or in a particular instance and either retroactively or prospectively) with the written consent of the Company and the Holder. Any waiver or amendment effected in accordance with this Section 9.8 will be binding upon each future holder of this Note and the Company.

**9.9** Severability. If one or more provisions of this Note are held to be unenforceable under applicable law, such provisions will be excluded from this Note and the balance of the Note will be interpreted as if such provisions were so excluded and this Note will be enforceable in accordance with its terms.

**9.10** Acknowledgment. For the avoidance of doubt, it is acknowledged that the Holder will be entitled to the benefit of all adjustments in the number of shares of the Company's capital stock as a result of any splits, recapitalizations, combinations or other similar transactions affecting the Company's capital stock underlying the Conversion Shares that occur prior to the conversion of this Note.

**9.11** Further Assurances. From time to time, the parties will execute and deliver such additional documents and will provide such additional information as may reasonably be required to carry out the full intent and purpose of this Note and any agreements executed in connection herewith, and to comply with state or federal securities laws or other regulatory approvals.

**9.12** Officers and Directors not Liable. In no event will any officer or director of the Company be liable for any amounts due and payable pursuant to this Note.

**9.13** Waiver of Jury Trial. EACH PARTY HEREBY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS NOTE, THE SECURITIES OR THE SUBJECT MATTER HEREOF OR THEREOF. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS (INCLUDING NEGLIGENCE), BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. THIS SECTION HAS BEEN FULLY DISCUSSED BY EACH OF THE PARTIES HERETO AND THESE PROVISIONS WILL NOT BE SUBJECT TO ANY EXCEPTIONS. EACH PARTY HERETO HEREBY FURTHER REPRESENTS AND WARRANTS THAT SUCH PARTY HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT SUCH PARTY KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

**9.14** Transfer of Note. This Note may not be transferred or assigned by the Holder accept upon the prior written consent of the Company and any attempted such transfer without such consent shall render void the conversion rights of the Holder provided for in Section 5. Any such transfer shall only be effective upon its surrender to the Company for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form satisfactory to the Company. Thereupon, this Note shall be reissued to, and registered in the name of, the transferee, or a new Note for like Principal Amount and interest shall be issued to, and registered in the name of, the transferee. Interest and principal shall be paid solely to the registered holder of this Note. Such payment shall constitute full discharge of the Company's obligation to pay such interest and principal.

**9.15** Company Waiver; Delays and Omissions. The Company hereby waives demand, notice, presentment, protest and notice of dishonor. It is agreed that no delay or omission to exercise any right, power or remedy accruing to the Holder, upon any breach or default of the Company under this Note shall impair any such right, power or remedy, nor shall it be construed to be a waiver of any such breach or default, or any acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring.

IN WITNESS WHEREOF, the Company has executed this Note as of the date set forth above.

**MERIT STREET MEDIA, INC.**

By: _____

Address:  Merit Street Media, Inc.
5501 Alliance Gateway Freeway
Fort Worth, TX 76177

Email Addresses:

c/o

Jcheatwood@meritstreetmedia.com

BLidji@jw.com

**Agreed to and Accepted by Holder**:

**CROSSSEED, INC.**

By: _____

Name: Bunker Sessions

Title: President & CEO

Address:

    2448 E 81st Street, Suite 900

    Tulsa, OK 74137

Email Address:

    bunker.sessions@tct.tv

# EXHIBIT B

## Exhibit A

## ALLONGE TO CONVERTIBLE PROMISSORY NOTE

This endorsement is to be attached to and made a part of that certain CONVERTIBLE PROMISSORY NOTE, dated September 9, 2024 (the "**Note**"), in the original principal amount of Twenty-Five Million Dollars ($25,000,000.00) made by MERIT STREET MEDIA, INC., as the Company, in favor of CROSSSEED, INC. as Holder.

The Holder hereby endorses the Note as follows with the same force and effect as if such endorsement were set forth at the end of the Note:

PAY TO THE ORDER OF:

TCT MINISTRIES, INC.
11717 Rte 37
Marion, IL 62959

Date: March 5, 2025.

**This Allonge is to be attached to the Note
and is hereby made a part of the Note.**

CROSSSEED, INC., Holder

By: _____
Name: Colby M. May
Its: Authorized Director

4

4922-1287-5801.2

## BORROWER'S CONSENT TO ASSIGNMENT

### DATED: March 5, 2025

**MERIT STREET MEDIA, INC.**, a Texas (formerly Delaware) corporation ("**Borrower**") hereby consents, as of the date first written above, to the assignment to TCT MINISTRIES, INC., an Illinois not-for-profit corporation, of all rights and interests held by CROSSSEED, INC. ("**Assignor**") in the attached convertible promissory note dated September 9, 2024, between Borrower and Assignor.

MERIT STREET MEDIA, INC., Borrower

By: *Phil McGraw* (DocuSigned)
—D0F92304C6C246B...
Name: Dr. Phillip C. McGraw
Its: Chairman of the Board

4922-1287-5801.2

13

# EXHIBIT C

14

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Jason J. Kohout
777 E. Wisconsin Ave.
Milwaukee, WI 53202-5306

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

25-0025649699
05/27/2025 05:00 PM
FILED
TEXAS SECRETARY OF STATE
SOS
1485204760002

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Merit Street Media, Inc. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 13600 Heritage Parkway, Suite 200 | Fort Worth | TX | 76177 | USA |

2. DEBTOR'S NAME:

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| TCT Ministries, Inc. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 11717 Rte 37 | Marion | IL | 62959 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All assets now owned or hereafter acquired by Debtor or in which Debtor otherwise has rights and all proceeds thereof.

5. Check only if applicable and check only one box:  Collateral is ☐ held in a Trust  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
File with TX SoS

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

15