# **<u>Exhibit A</u>**

Binding Letter of Intent

Trinity Broadcasting Network (hereinafter "TBN") and Peteski Productions, Inc. ("Peteski") enter into this binding Letter of Intent ("Agreement") effective as of January 10, 2023. This Agreement sets forth the binding and entire understanding between the parties with respect to business relationship being formed for the purposes of publicly aligning the two companies through a newly formed, and newly branded network to launch in the calendar year 2024 or as mutually agreed to by the parties.

The following terms and conditions apply to the proposed transaction:

1. NewCo: A new entity ("NewCo") will be formed by TBN to create a new network. Upon the formation of NewCo, TBN will: i) transfer all required must carry waivers to NewCo and ii) license all TBN content to NewCo.

    Ownership of Newco will be allocated 70% to TBN and 30% to Peteski ("Initial Ownership") with additional equity to Peteski (to be capped at a total ownership by Peteski of 45% of NewCo) based on thresholds related to valuation and performance of NewCo which will be determined by the parties. The parties shall revisit the granting of additional equity to Peteski annually at the end of each production year.

    The parties will mutually agree on the name and governing provisions of NewCo, with tie-breaker decisions to be provided by TBN.

2. Peteski Compensation: Upon the execution of this Agreement, TBN will be obligated to compensate Peteski in the following manner:

    $500,000,000 over a 10 year period on the schedule set forth below:

    Upon signing this Agreement, TBN shall immediately pay an amount equal to $20,000,000 to Peteski. For the avoidance of doubt this $20,000,000 is a non-refundable and not contingent on the terms of this Agreement.

    Year 1 : $20,000,000 of which will be paid upon on the earlier of (i) the commencement date of production or (ii) January 2, 2024 in equal quarterly installments through the balance of 2024.

    Year 2: $52,000,000. $25,000,000 of which will be paid on the second anniversary of the date hereof, which the balance to be paid in equal, bi-monthly payments to be over the course of the year.

1

|   |   |   |
|---|---|---|
|   |   | Year 3: $51,000,000.  $25,000,000 of which will be paid on the third anniversary of the date hereof, which the balance to be paid in equal, bi-monthly payments to be over the course of the year. |
|   |   | Year 4: $51,000,000. $25,000,000 of which will be paid on the fourth anniversary of the date hereof, which the balance to be paid in equal, bi-monthly payments to be over the course of the year. |
|   |   | Year 5: $51,000,000.  $25,000,000 of which will be paid on the fifth anniversary of the date hereof, which the balance to be paid in equal, bi-monthly payments to be over the course of the year. |
|   |   | Year 6: $51,000,000.  $25,000,000 of which will be paid on the sixth anniversary of the date hereof, which the balance to be paid in equal, bi-monthly payments to be over the course of the year. |
|   |   | Year 7: $51,000,000.  $25,000,000 of which will be paid on the seventh anniversary of the date hereof, which the balance to be paid in equal, bi-monthly payments to be over the course of the year. |
|   |   | Year 8: $51,000,000. $25,000,000 of which will be paid on the eighth anniversary of the date hereof, which the balance to be paid in equal, bi-monthly payments to be over the course of the year. |
|   |   | Year 9: $51,000,000.  $25,000,000 of which will be paid on the ninth anniversary of the date hereof, which the balance to be paid in equal, bi-monthly payments to be over the course of the year. |
|   |   | Year 10: $51,000,000.  $25,000,000 of which will be paid on the tenth anniversary of the date hereof, which the balance to be paid in equal, bi-monthly payments to be over the course of the year. |
| 3. | Term | The term of this Agreement will be 10 years from the date hereof. |
| 4. | Services Provided by TBN: | TBN will provide the following in a first class quality and comparable manner to the quality of other first run syndicated television programming: |

2

A. All production services associated with "Dr. Phil" programming provided by NewCo, which will meet the existing quality and standards of the "Dr. Phil" programming and meet the approval of Peteski, including but not limited to:

i) actual production and editing of all episodes,
ii) dedicated hair and make-up artist,
iii) all wardrobe expenses,
iv) administrative personnel,
v) legal personnel,
vi) human resources personnel,
vii) sales personnel,
viii) insurance,
ix) ad campaigns and public relations,
x) travel and entertainment expenses,
xi) expenses relating to COVID protocols and mandates, and
xii) Promotional and marketing and any and all other functions customarily associated with a full scale, top level production, above and below the line.

B. Weather permitting round-trip helicopter (Bell 206B Jet Ranger or the equivalent) transportation from Dallas Love Field (FBO TBD) to landing pad on-site at Alliance studio. The parties acknowledge that there is no existing helipad at Alliance. TBN is in the process of filing for and acquiring the necessary zoning & FAA approvals for such helipad. Until Alliance studio has an active helipad transporation, TBN shall provide helicopter transportation to the nearest equivalent landing pad near Alliance Studio until a landing pad at Alliance studio is completed. Weather not permitting, round-trip first class ground transportation, e.g. full size SUV with driver.

C. Field shoots/news shoots, media appearances on behalf of show/network or related brand activity requiring out of town travel, Dr. Phil McGraw ("McGraw") to travel in own private plane at cost to be paid by TBN.

D. TBN will be an active promotional partner for McGraw's new books over the years, including making it apart of the "Partner of the Month" program and any and all other promotional platforms and opportunities on both channels and with other relationships they might leverage in the Christian community.

E. A dedicated PR, accounting, legal, and crisis management teams, personal assistant(s) and security for McGraw and Mrs. McGraw.

3

401902480.7

|   |   |   |
|---|---|---|
|   |   | F. Dedicated office, hair and make-up room and dressing room with private bathroom facilities. |
| 5. | Services Provided by Peteski: | Peteski will provide the following new content (the "Content"): |
|   |   | 160 (90 minute) new, topical episodes of the show "Dr. Phil" (the "Show") delivered over 24-27 production weeks, as needed. Including stage and field shoots. |
|   |   | Format will be consistent with the current format of Dr. Phil episodes and will be first class quality and comparable to the quality of other first run syndicated television programming. |
|   |   | Peteski will use reasonable efforts to provide, mutually agreed upon, integrations and product placements for the show (full integrations being 3-5minutes, with story built around product). |
|   |   | Peteski will use reasonable efforts to provide, mutually agreed upon, sponsorships that will be "voiced" and acknowledged on air, by McGraw with digital components accompanying as negotiated. |
|   |   | Two primetime specials, or documentaries and act as Executive Producer, on TBN programming platforms, in order to cross promote for both channels, for no hosting fee to either channel and to make reasonable guest appearances to support programming. |
| 6. | Peteski Approval Rights: | Peteski will have approval rights over studio design, buildout and timeline, with the mutual approval of TBN. |
|   |   | Peteski will have approval rights on all senior key personnel, e.g. Executive Producer, Director, Supervising Producers, Field Director, and other consultants and advisors as deemed necessary by Peteski. |
|   |   | Peteski will have the right to approve any use of the name, image or likeness of McGraw. |
|   |   | Peteski will have approval over all press releases and all marketing and promotional material related to the Content. |
| 7. | TBN Approval Rights: | TBN will consult with Peteski with regards to anyone who will have a recurring, on air role on the network. |
| 8. | Exclusivity: | Peteski will ensure that McGraw will exclusively provide the Show to NewCo.  McGraw may participate in other television |

4

401902480.7

|    |    |    |
|----|----|----|
|    |    | shows so long as they do not materially interfere with Services provided herein. |
| 9. | Confidentiality: | This Agreement, including all of its terms and conditions, will be kept strictly confidential by the parties. |
| 10. | Governing Law/ Dispute Resolution: | This Agreement will be governed by and construed in accordance with the laws of the state of Delaware. All disputes relating, directly or indirectly, to this Term Sheet in any way, will be submitted exclusively to, and decided exclusively in, a confidential arbitration under the rules of JAMS in the County of Los Angeles, California. The arbitrability of this provision will be solely determined by JAMS. In the event that any party seeks relief under this Agreement in any venue other than through JAMS (including, but not limited to federal or state court), then the complaining party will pay all of the costs, fees (including attorneys' fees), and expenses of the responding party. Each party will pay its own proportionate share of arbitrator fees and expenses. The parties each waive the right to seek any consequential, indirect, incidental and punitive damages and the arbitrator will have no authority to award such damages. The sole monetary remedy of each party in the event of any breach hereunder will be a demand for arbitration seeking the recovery of monetary damages actually suffered. The parties waive any right of appeal. The parties further waive any right to a jury trial. In the event that either files any claim against any shareholder, employee, officer, director, member, manager, representative, principal or agent of the other party, then the parties hereby agree that any such claims will also be subject to this dispute resolution section. |
| 11. | Binding Commitment: | TBN and Peteski may prepare a more formal agreement incorporating the foregoing provisions but, pending the preparation and execution of such more formal agreement(s), including, but not limited to a production services agreement , this Agreement, will constitute the entire understanding between the parties with respect to the subject matter hereof, superseding all previous written and oral negotiations and communications, and it may not be altered or modified, nor may any provisions be waived, except in writing. If any part or provision of this Agreement is adjudged through arbitration by JAMS to be invalid, such judgment will be confined in its operation to the part or provision ruled upon and will not impair or invalidate the remainder of this Agreement. |

[Signature Page to Follow]

6

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed on its behalf as of the date first above written.

Trinity Broadcasting Network

By: _____
Its: __J.B. Casoria_____
     Assistant Secretary

Peteski Productions, Inc.

By: _____
Its: President and CEO

7