Carl C. Butzer (TX Bar No. 03545900)
Christopher Bankler (TX Bar No. 24066754)
Vienna F. Anaya (TX Bar No. 24091225)
William T. Farmer (TX Bar No. 24127156
**Jackson Walker LLP**
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-6047
Email: cbutzer@jw.com
Email: cbankler@jw.com
Email: vanaya@jw.com
Email: wfarmer@jw.com

Charles L. Babcock (TX Bar No. 01479500)
Bruce J. Ruzinsky (TX Bar No. 17439425)
Matthew D. Cavenaugh (TX Bar No. 24062656)
Emily Meraia (TX Bar No. 24129307)
**Jackson Walker LLP**
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Email: bruzinsky@jw.com
Email: cbabcock@jw.com
Email: mcavenaugh@jw.com
Email: emeraia@jw.com

*Counsel for Peteski Productions, Inc. and*
*Phillip C. McGraw*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>MERIT STREET MEDIA, INC.[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 25-80156 (SWE) |
| MERIT STREET MEDIA<br>    Plaintiff,<br><br>v.<br><br>TRINITY BROADCASTING OF TEXAS, INC.<br>and TCT MINISTRIES, INC.<br>    Defendants | Adversary Pro. No. 25-08006-SWE |
| TRINITY BROADCASTING OF TEXAS, INC.<br>    Third-Party Plaintiff,<br><br>v.<br><br>PETESKI PRODUCTIONS, INC. and<br>PHILLIP C. MCGRAW<br>    Third-Party Defendants. | |

**THIRD-PARTY DEFENDANTS PETESKI PRODUCTIONS, INC. AND**
**PHILLIP C. MCGRAW'S BRIEF IN SUPPORT OF MOTION TO**

---

[1] The last four digits of the Debtor's federal tax identification number are 8990.  The Debtor's mailing address is 5501 Alliance Gateway Fwy, Fort Worth, TX 76177.

**COMPEL ARBITRATION AND STAY, OR IN THE ALTERNATIVE, MOTION TO
<u>ABSTAIN, OR IN THE ALTERNATIVE, MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. BACKGROUND..................................................................................................................... 2

    A.  The Binding Letter of Intent ............................................................................................ 2

    B.  The Voting Agreement .................................................................................................... 4

    C.  The Stock Amendment.................................................................................................... 4

    D.  The Adversary Proceeding.............................................................................................. 5

III. ARGUMENT ........................................................................................................................ 6

    A.  The Court Should Order Arbitration and Stay the Third-Party Complaint......................... 6

        i.  All Counts in the Third-Party Complaint Are Arbitrable...................................... 7

        ii.  The Arbitrability of the Claims is Delegated to the Arbitrator............................. 10

        iii.  Peteski Can Enforce the Arbitration Provisions for Claims Against Dr. McGraw. ............ 11

        iv.  The Bankruptcy Court Should Enforce the FAA's Mandate.............................. 12

        v.  TBN Is Contractually Required to Pay Movants' Attorneys' Fees and Costs for Attempting to Circumvent the Arbitration Provision. ........................................... 13

        vi.  This Court Should Compel Arbitration and Stay the Proceeding........................ 14

    B.  In the Alternative, the Court Should Abstain From Hearing or Adjudicating the Third-Party Complaint. ........................................................................................................ 15

    C.  In the Alternative, the Court Should Dismiss the Third-Party Complaint for Lack of Jurisdiction................................................................................................................. 17

IV. CONCLUSION.................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................................................ 6

*Celotex v. Edwards*,
  514 U.S. 300 (1995) .............................................................................................. 17

*In re Coho Energy, Inc.*,
  309 B.R. 217 (Bankr. N.D. Tex. 2004) ................................................. 12, 15, 16

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213 (1985) ................................................................................................ 6

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ......................................................................................... 12

*In re Fort Worth Osteopathic Hosp., Inc.*,
  406 B.R. 741 (Bankr. N.D. Tex. 2009) ............................................................... 15

*Matter of Gober*,
  100 F.3d 1195 (5th Cir. 1996) ............................................................................. 15

*Graves v. BP America, Inc.*,
  568 F.3d 221 (5th Cir. 2009) ................................................................................. 7

*In re Green Field Energy Servs., Inc.*,
  554 B.R. 315 (Bankr. D. Del. 2016) .................................................................... 18

*Greenberg Traurig, LLP v. Nat'l Am. Ins. Co.*,
  448 S.W.3d 115 (Tex. App.—Houston [14th Dist.] 2014, no pet.).................... 12

*Grigson v. Creative Artists Agency, LLC*,
  210 F.3d 524 ......................................................................................................... 11

*In re GWG Holdings, Inc.*,
  No. 22-90032, 2025 WL 660059 (Bankr. S.D. Tex. Feb. 26, 2025) ................... 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) .......................................................................................... 10, 11

*In re Nat'l Gypsum Co.*,
  118 F.3d at 1067 .............................................................................................. 7, 12

*In re Nat'l Gypsum Co.*,
  118 F.3d at 1067–69 ............................................................................................. 12

*Neal v. Hardee's Food Sys., Inc.*,
   918 F.2d 34 (5th Cir. 1990) ............................................................................................... 9, 10

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*,
   139 F.3d 1061 (5th Cir. 1998) ................................................................................................ 7, 8

*Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*,
   297 F.3d 388 (5th Cir. 2002) ................................................................................................. 8, 9

*In re Pettibone Corp.*,
   135 B.R. 847 (Bankr. N.D. Ill. 1992) ..................................................................................... 18

*Polyflow, LLC v. Specialty RTP, LLC*,
   993 F.3d 295 (5th Cir. 2021) ..................................................................................................... 8

*Primerica Life Ins. Co. v. Brown*,
   304 F.3d 469 (5th Cir. 2002) ..................................................................................................... 6

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   7 F.3d 1110 (3d Cir. 1993) ...................................................................................................... 12

*Shearson/American Express v. McMahon*,
   482 U.S. 220 (1987) ................................................................................................................. 14

*Texaco Expl. & Prod. Co. v. AmClyde Engineered Prods. Co.*,
   243 F.3d 906 (5th Cir. 2001) ................................................................................................... 14

*In re The Heritage Org., L.L.C.*,
   454 B.R. 353 (Bankr. N.D. Tex. 2011) ................................................................................... 19

*TMT Procurement Corp. v. Vantage Drilling Co.*,
   764 F.3d 512 (5th Cir. 2014) ................................................................................................... 17

*In re U.S. Brass Corp.*,
   301 F.3d 296 (5th Cir. 2002) ................................................................................................... 17

*Walker v. Cadle Co. (In re Walker)*,
   51 F.3d 562 (5th Cir. 1995) ............................................................................................... 17, 19

*Wash. Mut. Fin. Group, LLC v. Bailey*,
   364 F.3d 260 (5th Cir. 2004) ................................................................................................ 7, 12

*Work v. Intertek Res. Sols., Inc.*,
   102 F.4th 769 (5th Cir. 2024) .................................................................................................. 10

*Matter of Zale*,
   62 F.3d 746 (5th Cir. 1995) .......................................................................................... 17, 18, 19

**Statutes**

9 U.S.C. § 2 .................................................................................................................................... 6

9 U.S.C. § 3 .................................................................................................................... 14

9 U.S.C. §§ 3–4 ................................................................................................................ 6

28 U.S.C. § 157(a) ............................................................................................. 7, 12, 17, 19

28 U.S.C. § 1334 .................................................................................... 15, 16, 17, 19

28 U.S.C. § 1367 ............................................................................................................. 19

Third-party defendants Peteski Productions, Inc. ("Peteski") and Phillip C. McGraw ("Dr. McGraw" and together with Peteski, "Movants") file this brief in support of the *Joint Motion to Compel Arbitration and Stay, or in the Alternative, Joint Motion to Abstain, or in the Alternative, Joint Motion to Dismiss* [Adv. Docket No. 69].

## I. PRELIMINARY STATEMENT[2]

1.      Movants respectfully ask this Court for an order compelling arbitration and staying this proceeding. In the alternative, Movants ask this Court to abstain from adjudicating the *Original Third-Party Complaint Against Peteski Productions, Inc. and Phillip C. McGraw* [Adv. Docket No. 55] (the "Third-Party Complaint") filed by Trinity Broadcasting of Texas, Inc. dba Trinity Broadcasting Network ("TBN"). Or, in the alternative to the foregoing, the Movants seek dismissal of the Third-Party Complaint for lack of subject-matter jurisdiction.

2.      The Third-Party Complaint is nothing more than a private contract dispute between non-debtors, arising from prepetition agreements that the parties expressly agreed to arbitrate. Movants' right to arbitrate is clear: the arbitration provision is broad, binding, and directly applies to the claims in the Third-Party Complaint. And because the parties expressly delegated questions of arbitrability to the arbitrator, this Court should not decide which claims are subject to arbitration; any doubt about scope belongs to the arbitrator. The parties' agreement further provides that if any party seeks relief outside of JAMS—just as TBN has done in this Court—the complaining party (TBN) must pay all costs, fees (including attorneys' fees), and expenses of the responding party (Movants). Notably, Peteski has already commenced a JAMS arbitration concerning a dispute under its agreement with TBN. Under the Federal Arbitration Act and the parties' agreement,

---

[2]      Capitalized and undefined terms in this Preliminary Statement shall have the meanings assigned to them in subsequent sections of this brief.

Movants are entitled to have the state-law claims—non-core, involving only non-debtors, and having no impact on estate property, creditor recoveries, or claims administration—resolved in arbitration. Movants' rights and the integrity of the parties' agreement demand that this Court compel arbitration and stay prosecution of the Third-Party Complaint.

3.      In the alternative to a stay, this Court should exercise permissive abstention and abstain from hearing or adjudicating the Third-Party Complaint. The Third-Party Complaint does not implicate recovery to and/or from Merit Street Media, Inc. (the "Debtor"). In fact, the Third-Party Complaint will only have an impact on non-debtor parties TBN, Peteski, and Dr. McGraw. And because permissive abstention will not have any negative impact on the administration of the estate, this Court should use its broad discretion to abstain from any hearing or adjudication if it does not choose to compel arbitration and stay proceedings on the Third-Party Complaint.

4.      Alternatively, if the Court declines to compel arbitration and either stay or abstain, the Movants respectfully request that the Court dismiss the Third-Party Complaint for lack of subject-matter jurisdiction. The claims set forth in the Third-Party Complaint have no conceivable effect on Debtor's estate and once the Court resolves the matters already set for hearing in September 2025, nothing in the Third-Party Complaint even arguably supports "related to" bankruptcy jurisdiction. Resolution of these claims will not move a single dollar into or out of the Debtor's estate, and no creditor's recovery will change. The Third-Party Complaint simply does not belong in this Court, and the Movants are entitled to dismissal as a matter of law.

## II.  BACKGROUND

### A.      The Binding Letter of Intent

5.      On January 10, 2023, TBN and Peteski entered into a binding letter of intent (the "BLI") to launch a new network, referred to therein as NewCo. TBN and Peteski both signed the

BLI, as did Dr. McGraw in his capacity as President and CEO of Peteski.[3] The joint venture contemplated by the BLI would eventually be named Merit Street Media (the "<u>Merit Network</u>").

6.    In conjunction with the launch of the Merit Network, TBN and Peteski addressed key corporate issues in additional, ancillary contracts, such as allocation of equity and voting rights with respect thereto. The BLI provided that "[t]he parties shall revisit the granting of additional equity to Peteski annually at the end of each production year." *See* Ex. A at Appx. 002 (BLI § 1). The BLI expressly contemplated that additional long-form agreements would be executed by Peteski and TBN in furtherance of launching the Merit Network. *See id.* at Appx. 006 (BLI § 11).

7.    Notably, in the event of any disputes with respect to the BLI, Section 10 provides the following mandate to arbitrate:

> This Agreement will be governed by and construed in accordance with the laws of the state of Delaware. All disputes relating, directly or indirectly, to this Term Sheet in any way, will be submitted exclusively to, and decided exclusively in, a confidential arbitration under the rules of JAMS in the County of Los Angeles, California. The arbitrability of this provision will be solely determined by JAMS. In the event that any party seeks relief under this Agreement in any venue other than through JAMS (including, but not limited to federal or state court), then the complaining party will pay all of the costs, fees (including attorneys' fees), and expenses of the responding party. Each party will pay its own proportionate share of arbitrator fees and expenses. The parties each waive the right to seek any consequential, indirect, incidental and punitive damages and the arbitrator will have no authority to award such damages. The sole monetary remedy of each party in the event of any breach hereunder will be a demand for arbitration seeking the recovery of monetary damages actually suffered. The parties waive any right of appeal. The parties further waive any right to a jury trial. In the event that either files any claim against any shareholder, employee, officer, director, member, manager, representative, principal or agent of the other party, then the parties hereby agree that any such claims will also be subject to this dispute resolution section.

---

[3]    A true and correct copy of the BLI is attached hereto as **Exhibit A**.

*Id.* at Appx. 006 (BLI § 10) (emphasis added).[4]

8.      Officers, directors, agents, and other representatives of the parties are entitled to enforce the arbitration provision.

**B.      The Voting Agreement**

9.      On March 5, 2024, the Debtor, TBN, and Peteski entered into a Voting Agreement (the "<u>Voting Agreement</u>").[5] The Voting Agreement contains a "Dispute Resolution" provision that mandates submission to the courts of Texas and does not contain an arbitration provision. Ex. B at Appx. 016–17 (Voting Agreement ¶ 6.16).

10.      The Voting Agreement was not a stand-alone document; it was a component of the parties' broader joint venture arrangement with Merit Network. Specifically, the Voting Agreement, prior to its termination, addressed essential corporate governance issues, including the allocation of voting rights and board seats for Merit Network. *See* Ex. B at Appx. 010. In short, the Voting Agreement was linked to the purpose and function of the BLI between TBN and Peteski as contemplated by Section 11 of the BLI.

**C.      The Stock Amendment**

11.      On August 8, 2024, the Debtor, Peteski, and TBN entered into the Stock Confirmation Agreement (the "<u>Stock Amendment</u>"),[6] which accomplished a change of control of the Debtor. Pursuant to the Stock Amendment, TBN went from a 70% stockholder of the Debtor to a 30% stockholder, and Peteski went from a 30% stockholder of the Debtor to a 70%

---

[4]    *See also id*, at § 11 ("[T]his Agreement will constitute the entire understanding between the parties with respect to the subject matter hereof, superseding all previous written and oral negotiations and communications, and it may not be altered or modified, **nor may any provisions be waived**, except in writing.") (emphasis added).

[5]    A true and correct copy of the Voting Agreement is attached hereto as **<u>Exhibit B</u>**.

[6]    The Stock Amendment is also referred to as the Stock Confirmation Agreement, the Stock Confirmation or the Stock Swap. A true and correct copy of the Stock Amendment is attached hereto as **<u>Exhibit C</u>**.

stockholder. There is no dispute resolution or arbitration provision in the Stock Amendment. *See*
Ex. C at Appx. 026. Like the Voting Agreement, the Stock Amendment was linked to the purpose
and function of the BLI between TBN and Peteski pursuant to Section 11 of the BLI.

**D.    The Adversary Proceeding**

12.    On July 2, 2025 ("Petition Date"), the Debtor filed its voluntary petition for chapter
11 relief, commencing the above-referenced bankruptcy proceeding.

13.    Also on the Petition Date, the Debtor filed its *Adversary Complaint for Declaratory
and Monetary Relief* [Adv. Docket No. 1] against TBN and TCT Ministries, Inc., initiating this
adversary proceeding (the "Adversary Proceeding").

14.    On August 20, 2025, TBN filed its Third-Party Complaint. The third-party plaintiff
in the Third-Party Complaint is a non-debtor party (TBN), seeking affirmative relief against two
other non-debtor parties (Peteski and Dr. McGraw).

15.    The Third-Party Complaint pleads seven counts, all predicated on alleged
misrepresentations or breaches by Peteski and/or Dr. McGraw in negotiating, performing, or
allegedly refusing to perform obligations to pursue a joint venture emanating from the BLI. The
seven counts are:

- Fraudulent inducement with respect to the BLI;
- Breach of the BLI;
- Declaratory relief with respect to the BLI;
- Fraudulent inducement with respect to the Stock Amendment;
- Declaratory relief with respect to the Stock Amendment;
- Breach of the Voting Agreement; and
- Declaratory relief with respect to the Voting Agreement.

16.     Starting on September 16, 2025, this Court began hearing TBN's Motion to Dismiss,[7] which will resolve certain issues regarding corporate authority, including certain relief asserted by TBN with regard to the breach and declaratory judgment counts related to the Voting Agreement.

### III.  ARGUMENT

**A.     The Court Should Order Arbitration and Stay the Third-Party Complaint.**

17.     The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has repeatedly emphasized that the FAA reflects a "'liberal federal policy favoring arbitration agreements,'" and "the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Indeed, this "strong national policy" requires that "all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)).

18.     Where a suit is brought "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court must stay the action and compel arbitration once it is satisfied that (a) a valid arbitration agreement exists, and (b) the dispute falls within its scope. 9 U.S.C. §§ 3–4; *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts

---

[7]     *Trinity Broadcasting of Texas, Inc. and TCT Ministries, Inc.'s* Emergency *Motion for an Order: (I) Dismissing Debtor's Chapter 11 Case, (II) Converting the Case to Chapter 7, or (III) Appointing a Chapter 11 Trustee* [Docket No. 100] (the "Motion to Dismiss").

shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). The validity of an arbitration agreement is determined under the contract law of the state that governs the agreement, but the scope of the agreement is a matter of federal substantive law. *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (internal citation omitted); *Graves v. BP America, Inc.*, 568 F.3d 221, 222–23 (5th Cir. 2009). Under federal law, the presumption in favor of arbitration is particularly strong where, as here, the arbitration clause is broad. *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) ("We resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration. . . . [A]rbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'") (internal citations omitted).

19.    In *National Gypsum*, the Fifth Circuit held that a bankruptcy court has no discretion to refuse to compel arbitration of matters that do not involve "core" bankruptcy proceedings under 28 U.S.C. § 157(b). 118 F.3d 1056, 1067 (5th Cir. 1997). Even where "core" matters are implicated, a bankruptcy court must still enforce an arbitration agreement unless (a) the underlying nature of a proceeding derives exclusively from the provisions of the Bankruptcy Code, as opposed to prepetition legal or equitable rights of a debtor, *and* (b) the arbitration of the proceeding would conflict with the purpose of the Code. *Id.*

    i.    *All Counts in the Third-Party Complaint Are Arbitrable.*

20.    The BLI is an enforceable contract,[8] with an arbitration provision that is as broad as they come, covering "all disputes relating, directly or indirectly, to this Term Sheet in any way."

---

[8]  *See, e.g.*, Third-Party Complaint, ¶ 99 (conceding the BLI is a "valid contract"); *Original Answer to Adversary Complaint for Declaratory and Monetary Relief* [Adv. Docket No. 49], ¶ 4 ("Trinity admits that in January 2023, TBN and Peteski executed a Binding Letter of Intent ('BLI'), and its terms speak for itself.").

*See* Ex. A at Appx. 006 (BLI § 10). Nearly identical provisions have been held to encompass not only direct contract claims, but also tort, statutory, and equitable claims that have any factual connection to the agreement. *See, e.g.*, *Polyflow, LLC v. Specialty RTP, LLC*, 993 F.3d 295, 303–04 (5th Cir. 2021) (collecting authority); *see also Pennzoil*, 139 F.3d at 1067 (holding that, "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue," arbitration should not be denied); *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393 (5th Cir. 2002) ("Where, as here, an arbitration provision purports to cover all disputes 'related to' or 'connected with' the agreement, we have held that the provision is 'not limited to claims that literally 'arise under the contract,' but rather embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute.") (quoting *Pennzoil*, 139 F.3d at 1067).

21.    In light of the BLI's broad arbitration provision, there is a presumption that the parties intended the arbitration provision to reach all aspects of the joint venture to form the Merit Network—including those aspects governed by other agreements "that are part of the same transaction" and that directly or indirectly relate to the BLI. *See Motorola*, 297 F.3d at 394 ("In sum, we hold that, where the parties include a broad arbitration provision in an agreement that is 'essential' to the overall transaction, we will presume that they intended the clause to reach all aspects of the transaction[.]").

22.    Importantly, neither the Voting Agreement nor the Stock Amendment are stand-alone agreements, and they cannot be viewed in isolation. Instead, they must be seen for what they are: Separate agreements that delineate the parties' relationship in the context of a broader transaction and purpose contemplated by the BLI. Faced with similar facts, the Fifth Circuit acknowledged that when "parties used multiple agreements to delineate their relationship," a broad

arbitration clause is enforceable as to such agreements, even when the arbitration clause only appears in one of the contracts. *See Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37–38 (5th Cir. 1990) (recognizing the "interdependence" of the various contracts). In *Neal*, the Fifth Circuit stressed how the agreement with the arbitration provision went to the "heart of the deal," thereafter finding it logical that the parties intended the broad arbitration clause in the key transaction contract to reach all other aspects of the parties' relationship. *Id.* ("The parties chose to include a broad arbitration clause in the License Agreements. Recognizing that the License Agreements were the heart of their deal, it is logical that the parties would have expressed their intent to arbitrate all of their disputes in a provision in those agreements."); *see also Motorola*, 297 F.3d at 394.

23.     Plainly stated, the Voting Agreement and Stock Amendment are interrelated with the BLI; such agreements would not exist without the BLI, which is the one agreement that goes to the "heart of the deal"—the joint venture to form Merit Network. To be sure, the BLI "expressly anticipates" that "more formal agreement(s)" and a series of corporate governance transactions will occur in conjunction with formation of the Merit Network, including as may relate to the allocation of equity (the Stock Amendment) and the governance structure for that entity (the Voting Agreement). *See* Ex. A at Appx. 002 (BLI § 1) ("The parties shall revisit the granting of additional equity to Peteski annually at the end of each production year. The parties will mutually agree on the name and governing provisions of NewCo, with tie-breaker decisions to be provided by TBN."); *id.* at Appx. 006 (BLI § 11) ("TBN and Peteski may prepare a more formal agreement incorporating the foregoing provisions but, pending the preparation and execution of such more formal agreement(s) . . ."); *see also Motorola*, 297 F.3d at 393 ("Indeed, each agreement expressly anticipates the execution of the other[.]"). The existence of multiple agreements makes no difference. Instead, as the Fifth Circuit noted in *Neal*, the Court must look to the "purpose of the

individual transactions." *Neal*, 918 F.2d at 37. Here, the Stock Amendment and the Voting Agreement were executed with the sole purpose of furthering the joint venture contemplated by the BLI. As such, the broad arbitration provision in the BLI encompasses all disputes related thereto, including those disputes contained in the Third-Party Complaint.

        *ii.     The Arbitrability of the Claims is Delegated to the Arbitrator.*

24.     In the event this Court has any question as to whether the claims in the Third-Party Complaint fall within the scope of the arbitration provision, the Court must send that determination to arbitration, as the parties expressly agreed to arbitrate even the arbitrability of the arbitration agreement. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."). Section 10 of the BLI provides, in pertinent part:

> This Agreement will be governed by and construed in accordance with the laws of the state of Delaware. All disputes relating, directly or indirectly, to this Term Sheet in any way, will be submitted exclusively to, and decided exclusively in, a confidential arbitration under the rules of JAMS in the County of Los Angeles, California. The arbitrability of this provision will be solely determined by JAMS.

Ex. A at Appx. 006 (BLI § 10). The JAMS arbitration rules provide:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

*See* JAMS Rules 11(b).

25.     The language of the arbitration provision clearly and unmistakably delegates issues of arbitrability to the arbitrator. The Fifth Circuit has held that the incorporation of similar JAMS arbitration rules serves as a clear and unmistakable delegation of arbitrability issues to the arbitrator. *See Work v. Intertek Res. Sols., Inc.*, 102 F.4th 769, 772 (5th Cir. 2024).

10

26.     "[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc.*, 586 U.S. at 69. The Court may not decide questions of arbitrability where, as here, the arbitration agreement clearly delegates that authority to the arbitrator. *Id.*; *see also In re GWG Holdings, Inc*., No. 22-90032, 2025 WL 660059, at *5 (Bankr. S.D. Tex. Feb. 26, 2025) (agreeing with defendant and movant Foley & Lardner LLP's argument that "the Court does not have authority to determine which claims are subject to arbitration because the arbitration clause grants exclusive authority to the arbitrators to determine the scope of the arbitration," and compelling arbitration of the claims without making any determination as to their arbitrability). Accordingly, this Court should compel the Third-Party Complaint to arbitration.

     *iii.*     *Peteski Can Enforce the Arbitration Provisions for Claims Against Dr. McGraw.*

27.     Although Dr. McGraw did not sign the BLI in his individual capacity, the BLI contemplates that Peteski can invoke the arbitration provision if a claim is brought against him, as outlined below:

> In the event that either [party] files any claim against any shareholder, employee, officer, director, member, manager, representative, principal or agent of the other party, then the parties hereby agree that any such claims will also be subject to this dispute resolution section.

Ex. A at Appx. 006 (BLI § 10).

28.     The Fifth Circuit also recognizes doctrines under which a non-signatory may enforce an arbitration agreement, including agency, direct benefits estoppel, and equitable estoppel. *See e.g.*, *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (affirming enforcement of an arbitration clause by a non-signatory based on equitable estoppel). As to agency, TBN alleges that Dr. McGraw negotiated and executed the BLI on behalf of Peteski and was Peteski's controlling principal. Courts routinely allow agents of a signatory to enforce the

principal's arbitration clause for disputes arising from the agent's conduct within the scope of the agreement. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993).

29.      Under the direct benefits and equitable estoppel doctrines, "a party who is seeking the benefits of a contract or seeking to enforce it is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *Greenberg Traurig, LLP v. Nat'l Am. Ins. Co.*, 448 S.W.3d 115, 121–22 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Stated differently, "the doctrine of estoppel prevents a party from 'having it both ways.'" *Bailey*, 364 F.3d at 267 (quoting *Grigson*, 210 F.3d at 528). TBN's claims against Dr. McGraw are intertwined with the BLI: they allege fraudulent inducement into signing it, failure to perform it, and seek interpretation of duties created by it. TBN cannot seek to enforce the BLI based on Dr. McGraw's acts and omissions, while simultaneously avoiding its obligation to arbitrate.

      *iv.*      *The Bankruptcy Court Should Enforce the FAA's Mandate.*

30.      The Supreme Court and Fifth Circuit have made clear that bankruptcy courts have no discretion to deny arbitration if an adversary proceeding does not involve "core" bankruptcy matters under 28 U.S.C. § 157(b). *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *In re Nat'l Gypsum Co.*, 118 F.3d at 1067–69. Here, the Court will resolve corporate governance issues in conjunction with the hearing on the Motion to Dismiss. All remaining claims are state law causes of action between non-debtor parties, that do not invoke substantive rights created by the Bankruptcy Code, nor do they require administration of the estate. *See, e.g.*, *In re Coho Energy, Inc.*, 309 B.R. 217, 222 (Bankr. N.D. Tex. 2004) ("This is an action seeking damages for pre-petition breaches of contracts and for pre-petition tortious conduct, and it is a non-core proceeding which neither arises in nor under title 11"). Such non-core claims are routinely sent to arbitration. *See In re Nat'l Gypsum Co.*, 118 F.3d at 1067.

31.     Even if the Court views the claims as involving "core" bankruptcy matters, it must

still enforce the parties' agreement to arbitrate unless (i) the underlying nature of the proceeding

derives exclusively from the provisions of the Bankruptcy Code, as opposed to prepetition legal

or equitable rights of a debtor, *and* (ii) the arbitration of the proceeding would conflict with the

purpose of the Bankruptcy Code, such as "the goal of centralized resolution of purely bankruptcy

issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the

undisputed power of a bankruptcy court to enforce its own orders." *See id.* at 1067–69. Here,

TBN's claims are based exclusively on conduct wholly unrelated to the underlying bankruptcy

proceeding. As such, the Court need not consider whether the arbitration of this dispute would

conflict with the Bankruptcy Code's provisions. But even if it did, the outcome would be no

different: Arbitration of damages and declaratory relief between non-debtor parties (TBN and

Movants) will not impair estate administration or the rights of creditors. Because neither of the

two elements justifying the Court's exercise of discretion is satisfied here, the Court must abide

by the FAA's mandate to honor the parties' agreement to arbitrate.

> v.     *TBN Is Contractually Required to Pay Movants' Attorneys' Fees and Costs for Attempting to Circumvent the Arbitration Provision.*

32.     The BLI contains an express fee-shifting provision that requires any party who files

a claim outside of the agreed arbitration forum to pay the responding party's attorneys' fees and

costs. Section 10 of the BLI provides, in pertinent part:

> In the event that any party seeks relief under this Agreement in any venue other than through JAMS (including, but not limited to federal or state court), then the complaining party will pay all of the costs, fees (including attorneys' fees), and expenses of the responding party.

*See* Ex. A at Appx. 006 (BLI § 10).

33.     Here, TBN sought relief outside of JAMS. It publicly filed its Third-Party

Complaint in this Court, asserting claims that are subject to the BLI's mandatory arbitration

provision. By doing so, TBN has attempted to circumvent the parties' clear agreement to resolve "all disputes relating, directly or indirectly, to this Term Sheet in any way" exclusively through confidential arbitration before JAMS in Los Angeles County, California. As a result, under the plain and unambiguous language of the BLI, TBN is required to pay all attorneys' fees, costs, and expenses incurred by Peteski and Dr. McGraw in responding to this improper filing and in seeking to enforce the arbitration agreement.

34.     Accordingly, TBN is liable to Peteski and Dr. Phil McGraw for all attorneys' fees, costs, and expenses incurred in connection with responding to TBN's Third-Party Complaint and in seeking to compel arbitration, as expressly required by Section 10 of the BLI. Movants will seek its attorneys' fees incurred in responding to TBN's Third-Party Complaint in the appropriate tribunal—JAMS arbitration.

 *vi.* *This Court Should Compel Arbitration and Stay the Proceeding.*

35.     The FAA does not offer the Court discretion once it has determined that an issue is subject to an agreement between the parties. Given that the issues pending in the Third-Party Complaint are subject to arbitration—or at least to a decision on arbitrability by an arbitrator— this Court should compel arbitration. And, once the matter is referred to arbitration, the Court must stay the Third-Party Complaint within the Adversary Proceeding as required under the FAA. 9 U.S.C. § 3 (the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."); *see also Shearson/American Express v. McMahon,* 482 U.S. 220, 226 (1987) ("[A] court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement."); *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001).

14

**B.**     **In the Alternative, the Court Should Abstain From Hearing or Adjudicating the Third-Party Complaint.**

36.     In the alternative to compelling arbitration and staying the case, the Court should abstain from hearing or adjudicating the Third-Party Complaint. Permissive abstention is governed by 28 U.S.C. § 1334(c)(1), which states:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334.

37.     Courts have "broad discretion to abstain from state law claims whenever appropriate." *Matter of Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996). The "starting point" in analyzing whether permissive abstention is appropriate is whether abstention "will impede or disrupt the bankruptcy court's exclusive and non-delegable control over the administration of the estate within its possession." *Coho Energy* 309 B.R. at 221 (internal citations omitted). Other factors a court may consider are drawn from the elements of mandatory abstention: (a) the existence of two closely related proceedings based upon state law or a state law cause of action; (b) the absence of any basis for jurisdiction other than 28 U.S.C. § 1334; (c) the likelihood of timely adjudication in state court; (d) the predominance of state law issues; and (e) the degree of relatedness of the proceeding to the bankruptcy case. *Id.* at 222; *see also In re Fort Worth Osteopathic Hosp., Inc.*, 406 B.R. 741, 747 (Bankr. N.D. Tex. 2009) (listing a "laundry list" of factors that could be analyzed, but noting the court "is not required to address each factor"). Also included among the "laundry list" of factors that a court may consider are the burden on its docket, the likelihood that the commencement of the proceeding in bankruptcy court involves forum-shopping by one of the parties, the existence of the right to a jury trial, and the presence in the proceeding of non-debtor parties. *Id.*

15

38.    Here, permissive abstention is appropriate for many of the same reasons that Judge Houser cited in the *Coho Energy* decision. ***First***, there is no basis for federal jurisdiction other than 28 U.S.C. § 1334. ***Second***, state law issues do not merely predominate the Third-Party Complaint; they overwhelm. The Third-Party Complaint is an action seeking damages for alleged prepetition breaches of contracts and for alleged prepetition fraudulent inducement of contracts. Such matters are non-core proceedings which neither arise in, nor under, title 11. *See, e.g.*, *Coho Energy*, 309 B.R. at 222 (holding that an action seeking damages for pre-petition tortious conduct, including breach of contract, was non-core). ***Third***, the Third-Party Complaint represents a dispute between non-debtor parties, and non-debtor parties have the sole economic interest in the outcome. ***Fourth***, there is no reason to believe that the claims cannot be timely adjudicated in another forum—in this case, an arbitration, as detailed further herein. ***Finally***, and perhaps most importantly, permissive abstention will not have *any* negative impact on the administration of the estate.

39.    Unlike the Complaint filed by the Debtor that commenced this Adversary Proceeding, the Third-Party Complaint will not cause the Debtor to recover or pay a single penny, nor will it alter the pool of claims against the Debtor or property available to satisfy such claims. Additionally, any corporate governance issues raised in the Third-Party Complaint through the counts related to the Voting Agreement and Stock Amendment are already slated to be heard by this Court in conjunction with TBN's Motion to Dismiss, and thus, will be resolved shortly. Setting such claims aside, the outcome of the Third-Party Complaint will only have an impact on non-debtor parties TBN, Peteski, and Dr. McGraw. As such, the Court should exercise its broad discretion in abstaining from hearing the Third-Party Complaint. In conjunction with permissively abstaining from the Third-Party Complaint (and as requested above), the Court should order the parties to arbitrate the Third-Party Complaint as required by their contract.

**C.     In the Alternative, the Court Should Dismiss the Third-Party Complaint for Lack of Jurisdiction.**

40.     Alternatively, if the Court declines to compel arbitration and either stay or abstain, the Movants respectfully request that the Court dismiss the Third-Party Complaint for lack of subject-matter jurisdiction. The jurisdiction of this Court is limited to "proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a); *see also* 28 U.S.C. § 1334(a) and (b) (jurisdiction of district court in bankruptcy matters). Because the Third-Party Complaint is not even "related to" the Debtor's chapter 11 case, it should be dismissed.

41.     The Fifth Circuit has stated that for the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, "it is not necessary" to distinguish between proceedings "arising under," "arising in a case under," or "related to a case under," title 11. *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 565 (5th Cir. 1995). Instead, to ascertain whether jurisdiction exists, "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Id.* (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987)).

42.     The usual test for determining whether a proceeding is "related to" the bankruptcy case is whether "the outcome of that proceeding could conceivably have an effect on the estate being administered in bankruptcy." *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002). Said another way, "an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 526 (5th Cir. 2014).

43.     The Supreme Court has warned that a bankruptcy court's "related to" jurisdiction is not limitless. *Celotex v. Edwards*, 514 U.S. 300, 308 (1995). In *Zale*, for example, the Fifth Circuit noted that "a large majority of cases reject the notion that bankruptcy courts have 'related

17

to' jurisdiction over third-party actions." *Matter of Zale*, 62 F.3d 746, 753 (5th Cir. 1995) (citing *In re Walker*, 51 F.3d at 569) (finding no "related to" jurisdiction with respect to a third-party action about who was responsible for damage to a debtor's estate); *see also In re Green Field Energy Servs., Inc.*, 554 B.R. 315, 319 (Bankr. D. Del. 2016) ("Generally, prior to confirmation, third party claims between non-debtors are beyond the bankruptcy court's jurisdiction."); *In re Pettibone Corp.*, 135 B.R. 847, 850 (Bankr. N.D. Ill. 1992) ("Bankruptcy judges frequently lack 'related to' jurisdiction to hear third-party complaints which arise from Adversary proceedings."). Cases which have upheld "related to" jurisdiction over third-party actions often do so because either (a) the subject of the third-party dispute is property of the estate or (b) the dispute over the asset would have an effect on the estate. *Zale*, 62 F.3d at 753. Importantly, "[s]hared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action 'related to' the bankruptcy." *Id.*

44.     Here, the Court should dismiss the Third-Party Complaint because it is nothing more than a private dispute between non-debtors over property that has no connection to the Debtor's estate. Not surprisingly, the outcome of the Third-Party Complaint will not have any impact on the estate, because it will not cause the Debtor to recover or pay a single penny, nor will it alter the pool of claims against the Debtor or property available to satisfy such claims.

45.     In response, TBN may assert that the Third-Party Complaint includes claims that go directly to the governance of the Debtor, thus impacting the bankruptcy estate. But corporate governance matters, such as the validity of board composition, the effect of the Voting Agreement and Stock Amendment, and the control of the Debtor, will be resolved by this Court in conjunction with the ongoing hearing on TBN's Motion to Dismiss. Setting aside such matters that the Court

is already deciding, the Third-Party Complaint contains nothing more than basic state law contract claims which have no bearing on administration or distribution of the Debtor's estate.

46.     Further, every claim in the Third-Party Complaint stands entirely apart from the Bankruptcy Code and this bankruptcy case. Not a single cause of action arises under, or even cites, the Code. These are straightforward state-law contract and tort claims—nothing more. If not for this bankruptcy, these disputes would be right where they belong: in JAMS arbitration, not here. And although the Third-Party Complaint may share facts with the Complaint that commenced this Adversary Proceeding, the Fifth Circuit has noted that "shared facts" alone does not suffice to make a third-party action "related to" a bankruptcy proceeding. *See Zale*, 62 F.3d at 753. For the reasons outlined above, the Third-Party Complaint should be dismissed for lack of jurisdiction under 28 U.S.C. §§ 157 and 1334.[9]

## IV.  CONCLUSION

WHEREFORE, Peteski Productions, Inc. and Phillip C. McGraw request that the Court compel the parties to arbitrate the Third Party Complaint and stay from hearing the Third-Party Complaint; or, in the alternative, abstain from hearing or adjudicating the Third-Party Complaint; or, in the alterative, dismiss the Third-Party Complaint for lack of jurisdiction; and grant such other and further relief as is just and proper under the circumstances.

---

[9]     TBN cannot argue that supplemental or ancillary jurisdiction exists under 28 U.S.C. § 1367, as the Fifth Circuit has plainly said that such jurisdiction does not apply to bankruptcy courts. *See, e.g., In re Walker*, 51 F.3d at 571 ("Because there is no Congressional statute conferring upon the *bankruptcy courts* the power to exercise supplemental jurisdiction, we find no error in the district court's conclusion that the bankruptcy court did not have the power to hear Cadle's contribution claim against Svara") (emphasis in original); *see also In re The Heritage Org., L.L.C.*, 454 B.R. 353 (Bankr. N.D. Tex. 2011) (Houser, J.) (following 5th Circuit's guidance in *Walker* and finding that bankruptcy court could not exercise ancillary or supplemental jurisdiction).

Dated: September 22, 2025
Dallas, Texas

/s/ *Charles L. Babcock*

**JACKSON WALKER LLP**
Charles L. Babcock (TX Bar No. 01479500)
Bruce J. Ruzinsky (TX Bar No. 17439425)
Matthew D. Cavenaugh (TX Bar No. 24062656)
Emily Meraia (TX Bar No. 24129307)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Email: cbabcock@jw.com
Email: bruzinsky@jw.com
Email: mcavenaugh@jw.com
Email: emeraia@jw.com


Carl C. Butzer (TX Bar No. 03545900)
Christopher Bankler (TX Bar No. 24066754)
Vienna F. Anaya (TX Bar No. 24091225)
William T. Farmer (TX Bar No. 24127156)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-6047
Email: cbutzer@jw.com
Email: cbankler@jw.com
Email: vanaya@jw.com
Email: wfarmer@jw.com

*Counsel for Peteski Productions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 22, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Charles L. Babcock*
Charles L. Babcock